UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

THE BOARD OF MANAGERS OF THE DIOCESAN       :
MISSIONARY SOCIETY OF THE PROTESTANT        :
EPISCOPAL CHURCH IN THE DIOCESE OF NEW      :
YORK,                                       :
                              Plaintiff,    :
                                            :
        v.                                  :
                                            :
COLONNELLI BROTHERS, INC., CHARLES          :
MCCARTNEY,  BRUCE H. SMITH,                  :
ENVIRONMENTAL CONSTRUCTION, INC.,           :
ATLAS EXCAVATING CORP., BELLEVILLE          :
LANDSCAPING, INC., CASTRO MATERIALS         :
CORP., CASTRO LANDSCAPING CORP.,            :
JUNIOR EFRAIN CASTRO A/K/A  EFRAIN          :
CASTRO, JR., DESIMONE'S PAVING CORP.,       :
GS PAVING INC., HOBART BUILDING             :
SERVICES LLC, MANCUSO CONSTRUCTION          :
 & REMODELING CORP., MCGANNON               :
EXCAVATING LLC, SCAFFIDI'S PAVING           :
AND EXCAVATING, INC., ZURLA                 :
EXCAVATING, INC., URIEL TRUCKING LLC,       :
PLYMOUTH INDUSTRIES, LLC, AMELIA            :
TRUCKING, LLC, and AIZAGA TRUCKING, LLC,    :
                                            :
                                            :
                              Defendants.   :

_____X

### COMPLAINT

Plaintiff The Board of Managers of the Diocesan Missionary Society of the Protestant

Episcopal Church in the Diocese of New York ("Plaintiff"), by and through the undersigned

attorneys, as and for its civil action complaint, sets forth and alleges as follows:

## STATEMENT OF THE CASE

1.  This is a civil action for cost recovery under Sections 107 and  113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607, as amended, and for declaratory relief under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, for equitable indemnity/restitution under state common law, and claims for trespass and nuisance. In this action the Plaintiff seeks to recover costs that it has incurred and may incur in responding to contamination at the Saint John in the Wilderness parish church property and surrounding areas, located at 119-120 St. John's Road, Town of Stony Point, Rockland County, New York (hereinafter, "the Site").

2.  The Episcopal Diocese of New York is an unincorporated association that was established in 1785 and is a diocese of the Episcopal Church in the United States of America, encompassing three New York City boroughs and seven counties within the State of New York, including Rockland County.

3.  Plaintiff, The Board of Managers of the Diocesan Missionary Society of the Protestant Episcopal Church in the Diocese of New York (the "Plaintiff" or "Diocese"), was incorporated as a New York religious corporation pursuant to the laws of the State of New York in the 1840s and maintains its principal place of business at 1047 Amsterdam Avenue, New York, New York 10025.

4.  Plaintiff owns the real property known as St. John's Church in the Wilderness (the Site), which property has been determined to contain hazardous substances in fill material transported to and illegally dumped at the Site without Plaintiff's knowledge or consent.

5.  The Site is currently the subject of enforcement action by the New York State Department of Environmental Conservation ("NYSDEC"), where NYSDEC has issued a Notice of Violation for the Site asserting that the Site is in violation of 6 NYCRR Part 360 regulations.

6.  More specifically, NYSDEC has asserted that the Site is in violation of 6 NYCRR 360.9 (a) & (b), 6 NYCRR 363-2.1(h), 6 NYCRR 360-1.7(a)(1)(i) and 6 NYCRR 360-7.1(b)(1)(i).

7.  Plaintiff seeks to recover its necessary response costs incurred in responding to the release and/or threatened release of hazardous substances at, on, near or from the Site pursuant to the strict, joint and several liability provisions of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

8.  Plaintiff also seeks a declaratory judgment pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, that Defendants are jointly and severally liable for the response costs incurred or to be incurred by the Plaintiff in connection with the Site and/or their equitable share of such costs, to the extent that such costs are incurred in a manner not inconsistent with the National Contingency Plan, and such other relief as the Court may deem appropriate.

## JURISDICTION AND VENUE

9.  This Court has jurisdiction over the subject matter of this action pursuant to, *inter alia*, 42 U.S.C. §§ 9607 and 28 U.S.C. § 1331, and under the doctrine of supplemental jurisdiction under 28 U.S.C. § 1367.

10. This Court has authority to issue a declaratory judgment concerning the rights and liabilities of the parties pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 and Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2).

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 9613(b), because the claims arose in this district, the releases or threatened releases of hazardous substances occurred in this district, and the defendants reside and/or have conducted business in this district.

12. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## DEFENDANTS

13. Each of the Defendants is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

14. Upon information and belief, each of the defendants generated and/or arranged for the disposal of at the Site and/or transported to the Site waste/fill material containing hazardous substances.

15. Upon information and belief, defendant Colonnelli Brothers, Inc. is an active business corporation incorporated in the State of New Jersey, with its principal place of business located at 409 South River Street, Hackensack, New Jersey 07601.

16. Upon information and belief, defendant Charles McCartney is an individual and citizen of the United States, whose current primary residential address is 3406 Bluebonnet Drive, Corpus Christi, Texas 78408.

17. Defendant Charles McCartney, during the times fill material containing hazardous substances was dumped at the Site, resided in Rockland County, New York, at times in a house on the subject Site across the Road from the church building.

18. Upon information and belief, defendant Bruce H. Smith is an individual and citizen of the United States, whose current primary residential address is 1 Timp Brook Road, Stony Point, New York 10980.

4

19. Upon information and belief, defendant Environmental Construction, Inc. is an active business corporation incorporated in the State of New York, with its principal place of business located at 21 Holt Drive, Stony Point, New York 10980.

20. Upon information and belief, defendant Atlas Excavating Corp. is an active business corporation incorporated in the State of New York, with its principal place of business located at 406 Sterling Mine Road, Tuxedo Park, New York 10987.

21. Upon information and belief, defendant Belleville Landscaping, Inc. is an active business corporation incorporated in the State of New York, with its principal place of business located at 84 North Route 9, Suite D, Congers, New York 10920.

22. Upon information and belief, defendant Castro Materials Corp. is an active business corporation incorporated in the State of New York, with its principal place of business located at 153 Samsondale Avenue, Haverstraw, New York 10927.

23. Upon information and belief, defendant Castro Landscaping Corp. is an active business corporation incorporated in the State of New York, with its principal place of business located at 69. N. Central Highway, Garnerville, New York 10923.

24. Upon information and belief, defendant Junior Efrain Castro a/k/a Efrain Castro, Jr. is an individual and citizen of the United States, whose current primary residential address is 153 Samsondale Avenue, Haverstraw, New York 10927.

25. Upon information and belief, defendant DeSimone's Paving Corp. is an active business corporation incorporated in the State of New York, with its principal place of business located at 18 Bragaglia Drive, Stony Point, New York 10980.

26. Upon information and belief, defendant GS Paving Inc. is an active business corporation incorporated in the State of New York, with its principal place of business located at 50 Main Street, Haverstraw, New York 10927.

27. Upon information and belief, defendant Hobart Building Services LLC is an active business limited liability company formed in the State of New Jersey, with its principal place of business located at 260 Mehrhof Road, Little Ferry, New Jersey 07643.

28. Upon information and belief, defendant Mancuso Construction and Remodeling Corp. is an active business corporation incorporated in the State of New York, with its principal place of business located at 560 Route 9W, Tompkins Cove, New York 10986.

29. Upon information and belief, defendant McGannon Excavating LLC Inc. is an active business limited liability company formed in the State of New York, with its principal place of business located at 85 North Central Highway, Garnerville, New York 10923.

30. Upon information and belief, defendant Scaffidi's Paving and Excavating, Inc. is an active business corporation incorporated in the State of New York, with its principal place of business located at 34 N. Route 9W, West Haverstraw, New York 10993.

31. Upon information and belief, defendant Zurla Excavating, Inc. is an active business corporation incorporated in the State of New York, with its principal place of business located at 90 Wayne Avenue, Stony Point, New York 10980.

32. Upon information and belief, defendant Uriel Trucking, LLC is an active business limited liability company formed in the State of New Jersey, with its principal place of business located at 2507 New Brunswick Avenue, South Plainfield, New Jersey 07080.

33. Upon information and belief, defendant Plymouth Industries, LLC is an active business limited liability company formed in the State of New Jersey, with its principal place of business located at 86 Lavergne Street, Belleville, New Jersey 07109.

34. Upon information and belief, defendant Amelia Trucking, LLC is an active business limited liability company formed in the State of New Jersey, with its principal place of business located at 265 North 6th Street, Newark, New Jersey 07107.

35. Upon information and belief, defendant Aizaga Trucking, LLC is an active business limited liability company formed in the State of New Jersey, with its principal place of business located at 546 Joralemon Street, Belleville, New Jersey 07109.

36. Defendant Colonnelli Brothers, Inc. arranged to dispose of hazardous substances at the Site, as that term and basis for liability is interpreted under CERCLA.

37. Defendant Colonnelli Brothers, Inc. transported hazardous substances that were disposed of at the Site, as that term and basis for liability is interpreted under CERCLA.

38. Defendant Colonnelli Brothers, Inc. operated the Site, as that term and basis for liability is interpreted under CERCLA.

39. Defendant Charles McCartney arranged to dispose of hazardous substances at the Site, as that term and basis for liability is interpreted under CERCLA.

40. Defendant Charles McCartney operated the Site, as that term and basis for liability is interpreted under CERCLA.

41. Defendant Bruce H. Smith  arranged to dispose of hazardous substances at the Site, as that term and basis for liability is interpreted under CERCLA.

42. Defendant Bruce H. Smith transported hazardous substances that were disposed of at the Site, as that term and basis for liability is interpreted under CERCLA.

43. Defendant Bruce H. Smith operated the Site, as that term and basis for liability is interpreted under CERCLA.

44. Defendant Environmental Construction, Inc. arranged to dispose of hazardous substances at the Site, as that term and basis for liability is interpreted under CERCLA.

45. Defendant Environmental Construction, Inc. transported hazardous substances that were disposed of at the Site, as that term and basis for liability is interpreted under CERCLA.

46. Defendant Environmental Construction, Inc. operated the Site, as that term and basis for liability is interpreted under CERCLA.

47. Defendant Atlas Excavating Corp. arranged to dispose of hazardous substances at the Site, as that term and basis for liability is interpreted under CERCLA.

48. Defendant Atlas Excavating Corp. transported hazardous substances that were disposed of at the Site, as that term and basis for liability is interpreted under CERCLA.

49. Defendant Belleville Landscaping, Inc. arranged to dispose of hazardous substances at the Site, as that term and basis for liability is interpreted under CERCLA.

50. Defendant Belleville Landscaping, Inc. transported hazardous substances that were disposed of at the Site, as that term and basis for liability is interpreted under CERCLA.

51. Defendant Castro Materials Corp. arranged to dispose of hazardous substances at the Site, as that term and basis for liability is interpreted under CERCLA.

52. Defendant Castro Materials Corp. transported hazardous substances that were disposed of at the Site, as that term and basis for liability is interpreted under CERCLA.

53. Defendant Castro Materials Corp. operated the Site, as that term and basis for liability is interpreted under CERCLA.

54. Defendant Castro Landscaping Corp. arranged to dispose of hazardous substances at the Site, as that term and basis for liability is interpreted under CERCLA.

55. Defendant Castro Landscaping Corp. transported hazardous substances that were disposed of at the Site, as that term and basis for liability is interpreted under CERCLA.

56. Defendant Castro Landscaping Corp. operated the Site, as that term and basis for liability is interpreted under CERCLA.

57. Defendant Junior Efrian Castro a/k/a Efrain Castro, Jr. arranged to dispose of hazardous substances at the Site, as that term and basis for liability is interpreted under CERCLA.

58. Defendant Junior Efrian Castro a/k/a Efrain Castro, Jr. transported hazardous substances that were disposed of at the Site, as that term and basis for liability is interpreted under CERCLA.

59. Defendant Junior Efrian Castro a/k/a Efrain Castro, Jr. operated the Site, as that term and basis for liability is interpreted under CERCLA.

60. Defendant DeSimone Paving Corp. arranged to dispose of hazardous substances at the Site, as that term and basis for liability is interpreted under CERCLA.

61. Defendant DeSimone Paving Corp. transported hazardous substances that were disposed of at the Site, as that term and basis for liability is interpreted under CERCLA.

62. Defendant GS Paving, Inc. arranged to dispose of hazardous substances at the Site, as that term and basis for liability is interpreted under CERCLA.

63. Defendant GS Paving, Inc. transported hazardous substances that were disposed of at the Site, as that term and basis for liability is interpreted under CERCLA.

64. Defendant Hobart Building Services, LLC arranged to dispose of hazardous substances at the Site, as that term and basis for liability is interpreted under CERCLA.

65. Defendant Hobart Building Services, LLC transported hazardous substances that were disposed of at the Site, as that term and basis for liability is interpreted under CERCLA.

66. Defendant Mancuso Construction & Remodeling Corp. arranged to dispose of hazardous substances at the Site, as that term and basis for liability is interpreted under CERCLA.

67. Defendant Mancuso Construction & Remodeling Corp. transported hazardous substances that were disposed of at the Site, as that term and basis for liability is interpreted under CERCLA.

68. Defendant McGannon Excavating LLC arranged to dispose of hazardous substances at the Site, as that term and basis for liability is interpreted under CERCLA.

69. Defendant McGannon Excavating LLC transported hazardous substances that were disposed of at the Site, as that term and basis for liability is interpreted under CERCLA.

70. Defendant Scaffidi's Paving and Excavating, Inc. arranged to dispose of hazardous substances at the Site, as that term and basis for liability is interpreted under CERCLA.

71. Defendant Scaffidi's Paving and Excavating, Inc. transported hazardous substances that were disposed of at the Site, as that term and basis for liability is interpreted under CERCLA.

72. Defendant Zurla Excavating, Inc. arranged to dispose of hazardous substances at the Site, as that term and basis for liability is interpreted under CERCLA.

73. Defendant Zurla Excavating, Inc. transported hazardous substances that were disposed of at the Site, as that term and basis for liability is interpreted under CERCLA.

74. Defendant Uriel Trucking, LLC arranged to dispose of hazardous substances at the Site, as that term and basis for liability is interpreted under CERCLA.

75. Defendant Uriel Trucking, LLC transported hazardous substances that were disposed of at the Site, as that term and basis for liability is interpreted under CERCLA.

10

76. Defendant Plymouth Industries, LLC arranged to dispose of hazardous substances at the Site, as that term and basis for liability is interpreted under CERCLA.

77. Defendant Plymouth Industries, LLC transported hazardous substances that were disposed of at the Site, as that term and basis for liability is interpreted under CERCLA.

78. Defendant Amelia Trucking, LLC arranged to dispose of hazardous substances at the Site, as that term and basis for liability is interpreted under CERCLA.

79. Defendant Amelia Trucking, LLC transported hazardous substances that were disposed of at the Site, as that term and basis for liability is interpreted under CERCLA.

80. Defendant Aizaga Trucking, LLC arranged to dispose of hazardous substances at the Site, as that term and basis for liability is interpreted under CERCLA.

81. Defendant Aizaga Trucking, LLC transported hazardous substances that were disposed of at the Site, as that term and basis for liability is interpreted under CERCLA.

82. Each of the above-identified defendants has joint and several liability pursuant to CERCLA.

## THE SITE

83. The Site is located on St. John's Road in Stony Point, New York, within the boundaries of Harriman State Park in Rockland County.

84. The Site's location is nearly centered in Harriman State Park.

85. The Park occupies parts of both Rockland and Orange Counties.

86. The Plaintiff's property is thirty-three plus acres and straddles St. John's Road approximately one half mile south of the Lake Welch Boat Launch on County Highway 106.

87. The subject property includes a church, graveyard, caretaker's dwelling, several old outbuildings, and vacant land.

11

88. The contaminated fill area at issue is located to the north and west of the church building on site, and additional contamination may also be located in the cemetery area further to the west of .the church building.

89. The NYSDEC has identified the Site as an illegal landfilling operation.

90. The NYSDEC investigated the Site on April 4, 2018 and found unacceptable waste types at the Site, including municipal solid waste, incinerator ash, dimensional lumber, tile, electrical wiring, automotive parts, carpet, metals and plastics.

91. The NYSDEC determined that the fill material included construction and demolition debris from sources that included New York City.

92. NYSDEC found the filled area to be at least five acres in area.

93. The NYSDEC observed a federal wetland adjacent to the Site and located in State parkland to be physically and chemically impacted by the illegal filling activities.

94. The NYSDEC roughly estimated the volume of contaminated fill to be 80,000 cubic yards.

95.     Soil analytical results conducted within the subject fill area by Plaintiff's environmental consultant, at the request of the NYSDEC, established the presence of the following hazardous substances as that term is defined by the United States Environmental Protection Agency ("EPA") and its laws and regulations: .

> ***a.*** ***VOCs***
> Volatile Organic Compounds (:VOCs") were detected above NYSDEC Soil Cleanup Objectives ("SCOs") in numerous soil samples.
>
> ***b.*** ***SVOCs***
> Semi Volatile Organic Compounds ("SVOCs") were detected above NYSDEC Soil Cleanup Objectives ("SCOs") in numerous soil samples.

12

*c.    Metals*

Metals were detected above NYSDEC Soil Cleanup Objectives ("SCOs") in numerous soil samples.

*d.    PCBs*

Poly Chlorinated Biphenyls ("PCBs") were detected above NYSDEC Soil Cleanup Objectives ("SCOs") in numerous soil samples.

*e.    Pesticides*

Pesticides were detected above NYSDEC Soil Cleanup Objectives ("SCOs") in numerous soil samples.

*f.    Total Cyanide*

Total Cyanide was detected above NYSDEC Soil Cleanup Objectives ("SCOs") in numerous soil samples.

*g.    Mercury*

Mercury was detected above NYSDEC Soil Cleanup Objectives ("SCOs") in numerous soil samples.

*h.    Hexavalent Chromium*

Hexavalent Chromium was detected above NYSDEC Soil Cleanup Objectives ("SCOs") in numerous soil samples.

*i.    PFAs*

PFAs was detected at levels above NYSDEC Soil Cleanup Objectives ("SCOs") in only one soil sample within the waste mass.

**j.    *Iron FLOC (F1 and F2) Sampling***

Metals and Total Organic Carbon were detected above NYSDEC Soil Cleanup Objectives ("SCOs") in numerous soil samples.

96. The laboratory results set forth above establishes that the fill materials at issue contained hazardous substances as that term is defined by EPA and as interpreted under CERCLA.

97. Certain hazardous substances as that term is defined by EPA and as interpreted under CERCLA have also been detected in groundwater at the Site.

98. Plaintiff had no knowledge of the filling activities at the Site.

99. Plaintiff had no business relationship with the defendants.

13

100.   Plaintiff is an innocent victim of the illegal filling activities of the defendants.

101.   As the fee owner of the Site, Plaintiff has responded to NYSDEC's violation and agreed to investigate the Site with NYSDEC's approval and oversight.

102.   As such, Plaintiff has incurred response costs as that term is defined by EPA and as interpreted under CERCLA.

103.   The response costs incurred to date by Plaintiff are necessary response costs that have been incurred consistent with the National Contingency Plan, as set forth in 40 C.F.R., Part 300 (2000).

## HISTORY OF THE SITE

104.   The Saint John Church in the Wilderness has operated as a parish since the late 1800s.

105.   While Plaintiff owns the real property that is defined as the Site, the day to day operations of the church and parish have always been managed and overseen by the local parish vicar and the local parish advisory board.

106.   In 2015, defendant McCartney, a new parishioner to the church, proposed expanding the cemetery area of the church to raise income for the parish.

107.   That proposed plan contemplated importation of fill material.

108.   In connection with defendant McCartney's proposed plan, in 2015 defendants Bruce H. Smith and Environmental Construction, Inc, filed for a permit with the Town of Haverstraw ("the Town") to designate an area of the Site by the adjacent cemetery to be filled and graded pursuant to the submitted plans, which contemplated the enlargement of the existing cemetery to the west of the church building, all without the knowledge or consent of Plaintiff.

109.   On June 1, 2015, the Town issued a limited building permit permitting enlargement of the existing cemetery.

110.   Between June of 2015 and December of 2015, the various defendants commenced to import fill materials to the Site, at first in the cemetery area only, but later in that period also behind the church building in an area where no permit had been issued by the Town for such work.

111.   At no time did any of the defendants apply for or obtain a permit from NYSDEC for the filling activities at the Site.

112.   At varying times defendants McCartney, Smith, Castro (individually) and Colonnelli Brothers acted as operators at the Site, as that term is defined by EPA and as interpreted under CERCLA, all without the knowledge or consent of Plaintiff.

113.   On December 23, 2015, Michael Cullen of the State of New York Parks Department advised the Town that the filling operation at the Site had become uncontrolled, in that there was no evidence of silt fencing on the downslopes, that the wetland area was not protected, that dump trucks were making a mess of the park's access roads and driving on them without proper permits, that there appeared to be unauthorized filling to the northwest of the church building, and that large trees were being buried with fill without being removed.

114.   On January 22, 2016, the Town was informed that there was far more than the cemetery expansion going on at the Site.

115.   On January 22, 2016, the Town issued two Stop Work Orders following a Site visit, requiring "that no more fill be brought in" because "erosion control measures had been removed prior to grading and fill work being completed and that the grading work that was being performed was being done without the proper permit."

116.    On January 29, 2016, defendant McCartney received a certified mailing containing the Stop Work Orders.

117.    On February, 2016, the Town building inspector visited the Site and advised defendant McCartney that "no more fill could be brought onto the premises."

118.    During the times relevant to this action, defendant Colonnelli Brothers arranged for and  transported to the Site, and dumped at the Site, imported fill material from numerous originating locations, including but not limited to a jobsite on Berkeley Avenue in Bloomfield, New Jersey.

119.    Throughout the times relevant to this action, defendant Colonnelli Brothers caused, permitted, allowed and invited the various defendants to transport to the Site and dump at the Site uncontrolled contaminated fill materials

120.    Throughout this filling activity, defendant Colonnelli Brothers stationed one of its employees on Site to manage and operate the filling activities.

121.    Throughout the filling activities, defendant Colonnelli Brothers brought to the Site, stored on Site, and operated on Site earth moving equipment it owned to grade and push the contaminated fill material.

122.    Throughout the filling activities, defendant Colonnelli Brothers failed to control the Site and failed to prevent the importation and dumping of fill containing hazardous substances at the Site.

123.    On December 22, 2017, "an older gentleman" who refused to disclose his name, went to the Town Hall to report that "there has been a steady stream of dump trucks dumping fill for months, and when he asked Charles McCartney about it, he became indignant and told him to mind his business, the complainant felt threatened."

16

124.    On January 2, 2018, the Town building inspector visited the Site, observed that his "Stop Work Order was ignored and the fill site increased four-fold," and reached out to an individual named Carmello Lombardo to demand that filling be stopped or there would be consequences.

125.    Mr. Lombardo stated that he would pass this information on to Nino Colonnelli of defendant Colonnelli Brothers and further represented that boulders would be placed block the entrance to the fill area.

126.    On March 26, 2018, the Town building inspector performed a Site visit, observed that "the filling continued and the site fill area increased substantially," and thereafter notified NYSDEC.

127.    On March 27, 2018, the Town building inspector visited the Site with representatives of NYSDEC and the Town Police Department to "shut the site down."

128.    On April 4, 2018, NYSDEC staff "observed operation of a landfill without a Department-issued permit and in a manner that does not comply with the requirements for a permit-exempt landfill," and documented that the fill material included municipal solid waste incinerator ash, dimensional lumber, tile, electrical wiring, automotive parts, carpet, metal and plastics.

129.    On October 11, 2018, violations were filed against the local parish and Charles McCartney with the Town Justice Court.

130.    On November 5, 2018, three loads of contaminated soil were removed from the Site by defendant Colonnelli Brothers and disposed of at a facility, Soil Safe, Inc., 300 Salt Meadow Road, Carteret, NJ 07008.

131.   On April 22, 2020, the local parish and defendant McCartney entered guilty pleas in the action pending the Town Justice Court.

132.   On November 30, 2020, NYSDEC issued a Notice of Violation for the Site.

133.   Thereafter, Plaintiff responded to the Notice of Violation, as the fee owner of the Site, and NYSDEC requested that Plaintiff investigate and characterize the fill area.

134.   Plaintiff thereafter engaged consultants, some of whom performed a Site investigation with the approval and oversight of the NYSDEC.

135.   Plaintiff has accordingly incurred necessary response costs that have been incurred consistent with the National Contingency Plan, as set forth in 40 C.F.R., Part 300 (2000), and anticipates that it will incur future necessary response costs to further investigate and then remediate the Site.

**COUNT I**
**COST RECOVERY PURSUANT TO 42 U.S.C. § 9607**

136.   Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 135, *supra*, as though fully set forth herein.

137.   Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

(1)   the owner and operator of a vessel or a facility,

(2)   any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3)   any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

18

(4)    any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for –

\*      \*      \*

(B)    any other necessary costs of response incurred by any other person consistent with the national contingency plan . . . .

138.    The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

139.    The management, handling, storage, discharge, release and/or disposal of "hazardous substances," as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), at the Site has resulted in a "release" as that term is defined in Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), and/or a "threatened release," as that term is used in CERCLA.  This release and/or threatened release has caused and threatens to cause contamination of the environment below, within and adjacent to the Site, including contamination of the soil and groundwater resources at, on, near or from the Site.

140.    The hazardous substances that have been released and/or disposed of at the Site have come to be located in the surface and subsurface soils, in sediments, in surface water and in groundwater at, on, or near the Site.

141.    The release and/or threatened release of hazardous substances at, on, near or from the Site have caused Plaintiff to incur substantial "response costs," as defined in 42 U.S.C. § 9601(25), which have not been reimbursed.  Such costs are necessary response costs that have

been incurred consistent with the National Contingency Plan, as set forth in 40 C.F.R., Part 300 (2000).

142.    Plaintiff will continue to incur response costs that are necessary costs consistent with the National Contingency Plan in responding to the release and/or threatened release of hazardous substances at, on, near or from the Site.

143.    Plaintiff is entitled to recover the necessary costs of response it has incurred and will incur at the Site from liable parties.

144.    Each defendant is a person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, or transported waste containing hazardous substances to the Site, or operated the Site. Therefore, the defendants are strictly, jointly and severally liable under Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), for costs which Plaintiff has incurred and may incur in responding to the release and/or threatened release of hazardous substances at, on, near or from the Site.

**COUNT II**
**DECLARATORY JUDGMENT**

145.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 144, *supra*, as though fully set forth herein.

146.    Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(9)(2), provides that in any action brought under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), the Court shall enter a declaratory judgment on liability for future "response costs" or "damages," as those terms are defined in CERCLA Sections 101(23), (24) and (25), 42 U.S.C. §§ 9601(23), (24) and (25) and CERCLA Section 101(6), 42 U.S.C. § 9601(6), respectively.

147.    An actual controversy, within the meaning of 28 U.S.C. § 2201, exists between the Plaintiff and each of the defendants regarding their respective obligations and legal liabilities for

response costs and damages that have been and may be incurred by the Plaintiff in connection with the release and/or threatened release of hazardous substances at, on, near or from the Site.

148.    Plaintiff requests a declaration pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that each defendant is strict, jointly and severally liable to Plaintiff under Section 107 of CERCLA for the costs that Plaintiff has incurred and may incur in responding to the release and/or threatened release of hazardous substances at, on, near or from the Site, to the extent that such costs are incurred in a manner not inconsistent with the National Contingency Plan.

149.    Plaintiff further requests a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that each of the Defendants is required to provide contribution to the Plaintiff pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a), for all costs in excess of Plaintiff's fair and equitable share (if any) of costs that Plaintiff has incurred and may incur in responding to the release and/or threatened release of hazardous substances at, on, near or from the Site.

150.    The Court is empowered by 28 U.S.C. §§ 2201 and 2202 to make a judicial determination of the rights, duties and obligations of the parties to resolve the controversy between the Plaintiff and each of the Defendants, and to grant such further relief as is necessary and proper.

### COUNT III
### COMMON LAW INDEMIFICATION/RESTITUTION

151.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 150, *supra*, as though fully set forth herein.

152.    Defendants are jointly and severally responsible for causing contaminated fill material containing hazardous substances to be disposed of on the Site.

153.    Plaintiff did not cause or contribute to the contamination at the Site.

154.    Plaintiff has incurred and will continue to incur costs while taking actions to perform Defendants' duty to investigate and remediate the Site.

155.    Defendants were motivated solely by profit in despoiling the Site and considered neither the damage to the environment nor the potential threat to the health and safety of the surrounding community their actions caused.

156.    Defendants have received a benefit as a result of Plaintiff's action in incurring response costs to perform their duty, insofar as defendants, rather than Plaintiff, should have borne the costs and expenses of their actions.

157.    Plaintiffs past and future costs of performing defendants' continuing duty should be borne by defendants.

158.    Since Plaintiff has incurred and will continue to incur costs that should be solely borne by defendants, defendants have been and will be unjustly enriched at Plaintiffs expense.

159.    An injustice will result if defendants do not reimburse and make Plaintiff whole for such costs.

160.    Defendants must provide restitution to the Plaintiff as a matter of common law, statute, equity, and/or otherwise for all damages, costs and expenses that Plaintiff has incurred and may incur in the future, which are not recoverable under Plaintiffs statutory CERCLA claims for relief herein.

## COUNT IV
## DECLARATORY JUDGMENT AS TO INDEMNIFICATION/RESTITUTION

161.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 160, *supra*, as though fully set forth herein.

162.    There is a present and actual controversy between Plaintiff and defendants concerning their respective rights and obligations with respect to responding to defendants' release and disposal of hazardous substances at the Site.

163.    Defendants are responsible for the disposal and release of hazardous substances at the Site.

164.    Plaintiff has expended and will continue *to* expend costs in responding to defendants' disposal and release of hazardous substances at the Site, which costs are necessary to protect public health, safety, and the environment.

165.    Defendants would be unjustly enriched were Plaintiff to continue to act to address hazardous substances disposed of or released at the Site by Defendants.

166.    An injustice would result if defendants were not required to make restitution and to reimburse and make Plaintiff whole for such costs.

167.    Plaintiff is entitled to a declaratory judgment holding defendants liable for all future damages, costs and expenses that Plaintiff has incurred or may incur, which are not recoverable under Plaintiffs First, Second, or Third claims for relief herein.

## COUNT V
## PRIVATE NUISANCE

168.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 167, *supra*, as though fully set forth herein.

169.    In their operation of the Site, or in arranging for the transport of hazardous substances to the Site, or in transporting hazardous materials to the Site, the defendants disposed of and caused the release of hazardous substances in, at or under the Site, which impacted the Site.

170.    Such release, disposal and/or impact by the defendants created a private nuisance in that by the defendants acts or omissions, or the acts or omissions of their agents and/or employees, defendants have caused an unreasonable and substantial interference with Plaintiff's right to use and enjoy the Site, and have caused Plaintiff and the environment significant harm.

171.    The significant harm caused by the defendants outweighs the utility of the defendants' conduct that caused this harm.

172.    The defendants' conduct was a substantial factor in creating and continuing the nuisance.

173.    The defendants failed to meet their legal and statutory obligations and maintained, created, or assisted in creating, the nuisance and their conduct caused the nuisance.

174.    Defendants, by reason of this private nuisance, are liable for all damages sustained by Plaintiff proximately caused by the contamination, including but not limited to those removal and other costs and damages incurred by Plaintiff in investigating the Site, and those future costs required by NYSDEC to remediate the contamination, maintain the remedy, and the loss of value to the property and Site.

## COUNT VI
## INTENTIONAL TRESPASS

175.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 174, *supra*, as though fully set forth herein.

176.    Plaintiff, as the fee owner of the Site and property at issue, has the right to exclusive possession of the Site and property

177.    Defendants have caused the release of hazardous substances onto Plaintiff's property, thereby interfering with, impacting and affecting Plaintiff's interests in exclusive possession.

24

178.    Defendants intentionally dumped fill materials containing hazardous substances in and on Plaintiff's property.

179.    It was reasonably foreseeable to defendants that the fill materials containing hazardous substances would interfere with and disturb Plaintiffs' possessory interests.

180.    Defendants' wrongful dumping has caused actual and substantial damages to Plaintiff.

181.    Defendants' actions and conduct in bringing contaminated fill materials to the Site was unlawful.

182.    Defendants have a duty to remove the hazardous substances which they intentionally and unlawfully dumped on Plaintiff's property.

183.    Defendants have failed to remove those hazardous substances.

184.    The trespass to plaintiffs' properties is continuing, and is abatable.

## COUNT VII
## NEGLIGENT TRESPASS

185.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 184, *supra*, as though fully set forth herein.

186.    Plaintiff, as the fee owner of the Site and property at issue, has the right to exclusive possession of the Site and property

187.    Defendants had and have a duty of care not to cause hazardous substances to intrude on and in Plaintiff's property.

188.    Defendants breached this duty of care by causing the release of hazardous substances on and in Plaintiff's property.

189.     As a direct and proximate result of the defendants' actions, hazardous substances and other unlawful  unnatural and excessive amounts of water are diverted and discharged onto plaintiffs' properties, with damage resulting.

190.     Defendants have failed to remove those hazardous substances.

191.     The trespass to plaintiffs' properties is continuing, and is abatable.

WHEREFORE, Plaintiff respectfully requests that this Court:

1.     Enter judgment pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), in favor of Plaintiff against each of the defendants holding each such defendant strictly, jointly and severally liable for the response costs incurred or to be incurred by Plaintiff in connection with the release and/or threatened release of hazardous substances at, on, near or from the Site;

2.     Enter judgment pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), in favor of Plaintiff and against each of the defendants holding each such defendant liable for all response costs in excess of each Plaintiff's respective fair and equitable share (if any) of the response costs incurred or to be incurred by the Plaintiff in connection with the release and/or threatened release of hazardous substances at, on, near or from the Site;

3.     Enter a declaratory judgment in favor of Plaintiff pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), holding each of the defendants strictly, jointly and severally liable for all additional response costs, plus interest, incurred or to be incurred by Plaintiff in connection with the release and/or threatened release of hazardous substances at, on, near or from the Site;

4.     Enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 holding each of the Defendants liable for their proportionate share of all response costs in excess of each Plaintiff's respective fair and equitable share (if any) of the response costs incurred or to be

incurred by the Plaintiff in connection with the release and/or threatened release of hazardous substances at, on, near or from the Site;

5.    Enter judgment on Count III pursuant to applicable common law;

6.    Enter a declaratory judgment on Count IV pursuant to applicable common law;

7.    Enter judgment on Plaintiff's nuisance and trespass claims (Counts V, VI and VII) pursuant to applicable common law;

8.    Award Plaintiff attorneys' fees, costs and disbursements in this action as well as prejudgment interest on all response costs from the date such costs were incurred; and

9.    Grant such other relief as this Court deems just, equitable and proper.

Dated: March 6, 2025

Respectfully Submitted,

Bleakley Platt & Schmidt, LLP
*Attorneys for Plaintiff*
One North Lexington Avenue
White Plains, New York 10601

By:    Jonathan A. Murphy
jamurphy@bpslaw.com
914-287-6165