UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE BOARD OF MANAGERS OF THE DIOCESAN MISSIONARY SOCIETY OF THE PROTESTANT EPISCOPAL CHURCH IN THE DIOCESE OF NEW YORK,

*Plaintiff*,

v.

COLONNELLI BROTHERS, INC., *et al.*,

*Defendants*.

No. 25-CV-1879 (KMK)

OPINION & ORDER

Appearances:

Justin Matthew Gardner, Esq.
McGowan Harrington Parisi PLLC
Tarrytown, New York
*Counsel for Plaintiff*

Jonathan Alan Murphy, Esq.
Bleakley Platt & Schmidt, LLP
White Plains, New York
*Counsel for Plaintiff*

Michael K Plumb, Esq.
Brian P. O'Neill, Esq.
Michael Steven Spinello, Esq.
Chiesa Shahinian & Giantomasi PC
Roseland, New Jersey
*Counsel for Defendant Colonnelli Brothers, Inc.*

Daniel Mark Krainin, Esq.
Beveridge & Diamond, P.C.
New York, New York
*Counsel for Defendants Bruce H. Smith and Environmental Construction, Inc.*

Dwight D. Joyce, Esq.
Law Offices of Dwight D. Joyce
Stony Point, New York
*Counsel for Defendants Bruch H. Smith and Environmental Construction, Inc.*

Donald J. Feerick, Jr., Esq.
Alak Shah, Esq.
Feerick Nugent MacCartney PLLC
South Nyack, New York
*Counsel for Defendant Belleville Landscaping, Inc.*

Robert Stuart Lewis, Esq.
Robert S. Lewis, Esq.
Orangeburg, New York
*Counsel for Scaffidi's Paving and Excavating, Inc.*

James M. Carman, Esq.
Carman, Callahan & Ingham, LLP
Farmingdale, New York
*Counsel for Uriel Trucking, LLC*

Thomas Holmgren, Esq.
Wilson Elser Moskowitz Edelman & Dicker LLP
New York, New York
*Counsel for Plymouth Industries, LLC*

KENNETH M. KARAS, United States District Judge:

The Board of Managers of the Diocesan Missionary Society of the Protestant Episcopal Church in the Diocese of New York ("Plaintiff") brings this Action against the Colonnelli Brothers, Inc. (the "Colonnelli Brothers"), Charles McCartney ("McCartney"), Bruce H. Smith ("Smith"), Environmental Construction, Inc. ("ECI"), Atlas Excavating Corp., Belleville Landscaping, Inc., Castro Materials Corp., Castro Landscaping Corp., Junior Efrain Castro, DeSimone's Paving Corp., GS Paving Inc., Hobart Building Services LLC, Mancuso Construction and Remodeling Corp., McGannon Excavating LLC, Scaffidi's Paving and Excavating, Inc., Zurla Excavating, Inc., Uriel Trucking, LLC, Plymouth Industries, LLC, Amelia Trucking, LLC, and Aizaga Trucking, LLC (collectively, "Defendants"), seeking cost recovery pursuant to § 107(a), 42 U.S.C. § 9607 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") and declaratory judgment pursuant to

§ 113(g)(2) of CERCLA, and bringing common law claims of unjust enrichment and restitution, declaratory judgment as to unjust enrichment and restitution, private nuisance, intentional trespass and negligent trespass. (*See* Compl. (Dkt. No. 1).)

Before the Court is a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on behalf of Defendants Smith and ECI (together, "Movants"). For the following reasons, Movants' Motion is denied.

## I. Background

### A. Factual Background

The following facts are drawn from the Complaint and appended materials to Plaintiff's Opposition and are assumed to be true for the purpose of resolving the instant Motion.

The Board of Managers of the Diocesan Missionary Society of the Protestant Episcopal Church in the Diocese of New York ("Plaintiff") is a New York religious corporation under the laws of the State of New York. (Compl. ¶ 3.) Plaintiff owns St. John's Church in the Wilderness ("St. John's" or the "Site"), which is located in Harriman State Park in Stony Point, New York. (*Id.* ¶¶ 4, 83–84.) St. John's includes a church, graveyard, caretaker's dwelling, several outbuildings, and vacant land. (*Id.* ¶ 87.)

In 2015, Defendant McCartney, who was a member of St. John's parish, proposed expanding the church's cemetery to raise income for the parish, a plan which contemplated importing fill material. (*Id.* ¶¶ 106–107.) In connection with this plan, Movants Smith and ECI filed for a permit with the Town of Haverstraw (the "Town") to designate an area of the Site by the adjacent cemetery to be filled and graded pursuant to the submitted plans, without the knowledge or consent of Plaintiff. (*Id.* ¶ 108.) This permit was issued on June 1, 2025. (*Id.* ¶ 109.) The permit lists ECI as the builder and supervisor of construction and was signed by

Smith. (Decl. of Jonathan A. Murphy in Opp. to Mot. to Dismiss ("Murphy Decl.") Ex. 2 (Dkt. No. 69).) Between June and December 2015, Defendants are alleged to have imported fill materials to the Site, both to the cemetery area and behind the church building, where no such permit had been issued. (Compl. ¶ 110.) Movant Smith, as well as non-moving Defendants McCartney, Castro, and Colonnelli Brothers, allegedly acted as operators at that Site at varying times. (*Id.* ¶ 112.) On December 23, 2015, an official with the State of New York Parks Department advised the Town that the filling operation at the Site had become uncontrolled, and on January 22, 2016, the Town was informed that the operations at the Site had gone beyond cemetery expansion. (*Id.* ¶¶ 113–114.) On January 22, 2016, after visiting the Site, the Town issued two Stop Work Orders requiring that "no more fill be brought in" to the Site. (*Id.* ¶ 115.) Defendant McCartney received these Stop Work Orders on January 29, 2016. (*Id.* ¶ 116.) The Town building inspector also advised Defendant McCartney that no more fill could be brought in in February 2016. (*Id.* ¶ 117.)

Throughout this period and after, Defendant Colonnelli Brothers is alleged to have dumped imported fill material at the Site, which it arranged for transportation from numerous locations, including a jobsite in New Jersey. (*Id.* ¶ 118.) Colonnelli Brothers also allegedly invited the other Defendants to dump uncontrolled contaminated fill materials at the Site. (*Id.* ¶ 119.) On January 2, 2018, in response to a report from a concerned citizen, the Town building inspector visited the Site and observed that filling activity had continued despite the Stop Work Order. (*Id.* ¶¶ 123–124.) The inspector told an individual named Carmello Lombardo that filling must be stopped, and Lombardo informed him he would inform the Colonnelli Brothers. (*Id.* ¶¶ 124–25.) Despite this, on March 26, 2018, the Town building inspector observed that the filling continued and notified the New York State Department of Environmental Conservation

("NYSDEC"), a representative from which visited the Site the next day. (*Id.* ¶¶ 126–27.) On October 11, 2018, proceedings were commenced against the St. John's Parish and McCartney in the Town Justice Court, in which both parties pled guilty on April 22, 2020. (*Id.* ¶¶ 129, 131.) On November 30, 2020, NYSDEC issued a Notice of Violation for the Site, which required Plaintiff to investigate and characterize the fill area. (*Id.* ¶¶ 132–33.) Plaintiff engaged a consultant, who determined that there were a number of hazardous substances, as that term is defined by the Environmental Protection Agency ("EPA"), in the Site's soil and groundwater. (*Id.* ¶¶ 95–97.) As a result of this investigation, Plaintiff has incurred and will incur in the future necessary response costs to investigate and remediate the Site consistent with the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP"), as set forth in 40 C.F.R., Part 300. (*Id.* ¶¶ 102–103.)

B. Procedural Background

Plaintiff initiated this Action on March 6, 2025. (*See* Compl. (Dkt. No. 1).) On April 16, 2025, Defendant Colonnelli Brothers answered and asserted cross-claims against all other Defendants and counterclaims against Plaintiff. (*See* Answer to Compl. (Dkt. No. 30).) On June 15, 2025, Defendant Belleville Landscaping, Inc. answered the Complaint and the Cross-Claims and asserted crossclaims against all other Defendants and counterclaims against Plaintiff. (*See* Answer to Compl. (Dkt. No. 41); Answer to Cross-Cl. (Dkt. No. 42).) On June 16, 2026, Defendant Belleville Landscaping, Inc. amended its answers. (*See* Am. Answer to Compl. (Dkt. No. 43); Am. Answer to Cross-cl. (Dkt. No. 44).) On July 11, 2025, Defendant Plymouth Industries, LLC answered and asserted cross-claims against all other Defendants and counterclaims against Plaintiff. (*See* Answer to Compl. (Dkt. No. 50).) On July 18, 2025, Plaintiff answered the three Counterclaims against it. (*See* Answer to Belleville Landscaping,

Inc. Countercl. (Dkt. No. 55); Answer to Colonnelli Brothers, Inc. Countercl. (Dkt. No. 56); Answer to Plymouth Industries, LLC Countercl. (Dkt. No. 57).) On July 31, 2025, Defendant Uriel Trucking, LLC answered the Complaint and asserted cross-claims against all Defendants and counterclaims against Plaintiff. (*See* Answer to Compl. (Dkt. No. 59).)

On September 15, 2025, Defendants ECI and Smith ("Movants") filed a Motion to Dismiss. (*See* Mot. to Dismiss (Dkt. No. 66); Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 67).) On October 3, 2025, Plaintiff responded. (*See* Pl.'s Mem. of Law in Opp. to Mot. to Dismiss ("Pl.'s Opp'n") (Dkt. No. 70); Murphy Decl.) On October 17, 2026, Movants replied. (*See* Reply Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Reply") (Dkt. No. 71).) On October 23, 2025, Defendant Scaffidi's Paving and Evacuating, Inc. answered the Complaint and asserted cross-claims and counterclaims against Plaintiff. (*See* Answer to Compl. (Dkt. No. 72).) On September 16, 2026, this Court issued an Order directing Movants to file a new Notice of Motion to Dismiss, but explaining that the Court will decide the Motion to Dismiss on the materials already submitted. (*See* Order (Dkt. No. 74).) On September 17, 2026, Movants filed a renewed Motion to Dismiss. (*See* Mot. to Dismiss (Dkt. No. 75).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation modified). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (citation modified). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which

judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation modified); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).

B. Analysis

1. CERCLA Claim against Smith or ECI

a. Elements of a CERCLA Claim

"Congress enacted CERCLA, 42 U.S.C. § 9601 *et seq.*, to address the cleanup of hazardous waste by imposing strict liability for necessary cleanup costs incurred that are 'consistent with the national contingency plan.'" *N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 220 (2d Cir. 2014) (quoting 42 U.S.C. § 9607(a)(4)(B)). "CERCLA's primary purposes are axiomatic: (1) to encourage the timely cleanup of hazardous waste sites; and (2) to place the cost of that cleanup on those responsible for creating or maintaining the hazardous condition." *Price Trucking Corp. v. Norampac Indus., Inc.*, 748 F.3d 75, 79 (2d Cir. 2014) (citation modified). "As a remedial statute, CERCLA should be construed liberally to give effect to its purposes." *See B.F. Goodrich v. Betkoski*, 99 F.3d 505, 514 (2d Cir. 1996), *overruled on other grounds by New York v. Nat'l Serv. Indus., Inc.*, 352 F.3d 682, 684 (2d Cir. 2003) (internal quotation marks omitted); *see also FirstEnergy Corp.*, 766 F.3d at 220 (same).

"CERCLA imposes liability for response costs incurred both by the government and by private parties." *Price Trucking Corp.*, 748 F.3d at 80 (citing 42 U.S.C. § 9607(a)(4)(A)–(B)). "A prima facie CERCLA claim requires the plaintiff to plead that '(1) [the] defendant fits one of the four classes of responsible parties outlined in § [107(a), 42 U.S.C. § 9607(a)]; (2) the site is a facility; (3) there is a release or threatened release of hazardous substances at the facility; (4) the plaintiff incurred costs responding to the release or threatened release; and (5) the costs and

response actions conform to the National Contingency Plan.'" *New York v. Town of Clarkstown*, 95 F. Supp. 3d 660, 674 (S.D.N.Y. 2015) (quoting *B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1198 (2d Cir. 1992)); *see also Fitzgibbons v. City of Oswego*, No. 10-CV-1038, 2011 WL 6218208, at *7 (N.D.N.Y. Dec. 13, 2011) (explaining pleading requirements for prima facie CERCLA claim). For the purposes of the first prong, four classes of "potentially responsible parties" ("PRPs") exist under CERCLA: "(1) present owners and operators of facilities that accepted hazardous substances for transport; (2) past owners and operators of such facilities; (3) generators of hazardous substances; and (4) certain transporters of hazardous substances." *FirstEnergy*, 766 F.3d at 220 (citing 42 U.S.C. § 9607(a)); *see also Pfohl Bros. Landfill Site Steering Comm. v. Allied Waste Sys., Inc.*, 255 F. Supp. 2d 134, 148 (W.D.N.Y. 2003) (describing the four classes of PRPs under CERCLA). These PRPs "are held strictly liable for a broad range of remediation expenses, including all costs of removal of the substances not inconsistent with the national contingency plan, other necessary response costs, damages for injury to natural resources, and the cost of health assessments." *Pfohl Bros.*, 255 F. Supp. 2d at 148 (citation modified).

b. Plaintiff's Allegations

Movants contend that Plaintiff has not adequately pled that they are PRP's under CERCLA because "the Complaint does not tether Smith and ECI to any disposal activity" and therefore, "it cannot sustain a claim against them as a CERCLA arranger, transporter, operator, or otherwise." (Defs.' Mem. 5.) Plaintiff, in response, urges the Court to look at the Complaint in its totality and find that "given Smith and ECI's role of filling and grading the cemetery, wherein the filling operations quickly expanded well beyond the cemetery," it has plausibly alleged that "Smith and ECI arranged for the disposal of hazardous substances at the Site." (Pl.'s Opp'n 13.)

As relevant here, Plaintiff alleges that Smith and ECI "filed for a permit [in 2015] . . . to designate an area of the Site by the adjacent cemetery to be filled and graded pursuant to the submitted plans, which contemplated the enlargement of the existing cemetery to the west of the church building." (Compl. ¶ 108.) Plaintiff also alleges that "the various defendants commenced to import fill materials to the Site, at first in the cemetery area only, but later in that period also behind the church building." (*Id.* ¶ 110.) Specifically with respect to Smith, Plaintiff alleges he "acted as [an] operator[] at the Site," (*id.* ¶ 112), "arranged to dispose of hazardous substances at the Site," (*id.* ¶ 41), and "transported hazardous substances that were disposed of at the Site," (*id.* ¶ 42). Plaintiff alleges ECI "arranged to dispose of hazardous substances at the Site," (*id.* ¶ 44), "transported hazardous substances that were disposed of at the Site," (*id.* ¶ 45), and "operated the Site," (*id.* ¶ 46). In its opposition briefing, Plaintiff also points to the application for the building permit to fill and grade the area by the St. John cemetery as further evidence of Movants' being "responsible for the filling and grading operations at the Site." (Pl.'s Opp'n 9–11.) Moving Defendant Smith signed the permit, and Moving Defendant ECI is listed as the "building and supervisor of construction." (Murphy Decl. Ex. 2.)[1] Plaintiff appears to

[1] The Movants do not appear to dispute that the Court may consider this document when deciding their Motion to Dismiss, instead arguing that "obtaining a permit and being listed as a supervisor do not constitute managing, directing or conducting operations specifically related to pollution." (Defs.' Reply 5 (quotation marks omitted).) The Court agrees that it may take judicial notice of this building permit as a "matter[] of public record." *Sandy Hollow Assocs. LLC v. Inc. Vill. of Port Washington N.*, No. 09-CV-2629, 2010 WL 6419570, at *7–8 (E.D.N.Y. Sep. 6, 2010), *report and recommendation adopted*, 2011 WL 1260245 (E.D.N.Y. Mar. 30, 2011), and *report and recommendation adopted*, 2011 WL 13374451 (E.D.N.Y. Apr. 13, 2011) (finding that building permit, among other documents, was a matter of public record which the court could rely on in deciding a motion to dismiss under Rule 12(b)(6)); *see also Verschleiser v. Frydman*, No. 22-CV-7909, 2023 WL 5835031, at *5 (S.D.N.Y. Sep. 7, 2023) ("When presented with a motion to dismiss, . . . courts may take judicial notice of court documents and other public records."); *Fair Hous. Just. Ctr. Inc. v. Lighthouse Living LLC*, No. 20 CV 4066, 2021 WL 4267695, at *3 (S.D.N.Y. Sep. 20, 2021) ("A court may . . . take judicial notice of public documents or matters of public record.").

allege that Movants are liable as arrangers, transporters, and operators under CERCLA. Because, as explained below, the Court has determined that Plaintiff adequately pled operator liability against Movants, it need not analyze whether they were also arrangers or transporters.

c. Operator Liability

Under CERCLA, a person is liable as a past "operator" if he "at the time of disposal of any hazardous substance . . . operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2); *see also 105 Mt. Kisco Assocs. LLC v. Carozza*, No. 15-CV-5346, 2017 WL 1194700, at *18 (S.D.N.Y. Mar. 30, 2017). "More specifically, for a party to be held liable as an 'operator,' it must have 'manage[d], direct[d], or conduct[d] operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations.'" *105 Mt. Kisco Assocs.*, 2017 WL 1194700, at *18 (quoting *FirstEnergy Corp.*, 766 F.3d at 222); *see also United States v. Bestfoods*, 524 U.S. 51, 66–67 (1998). "The Second Circuit has held that the Supreme Court's 'sharpened construction' of the term 'operator' is 'sufficiently broad to extend beyond titular owners and day-to-day operators,' but still 'implies a level of control over the hazardous substances at issue.'" *Town of Islip v. Datre*, 245 F. Supp. 3d 397, 425 (E.D.N.Y. 2017) (quoting *AMW Materials Testing, Inc. v. Town of Babylon*, 584 F.3d 436, 444 (2d Cir. 2009).

Here, Plaintiff alleges that Smith "acted as [an] operator[] at the Site," and that Smith and ECI "operated the site." (Compl. ¶¶ 43, 46, 112.) Plaintiff further alleges that Smith and ECI obtained the permit for filling and grading the Site in June 2015, and that Smith signed this permit, in which ECI was listed as the builder and supervisor. (Compl. ¶ 108; Murphy Decl. Ex. 2.) Finally, Plaintiff alleges that defendants "import[ed] fill materials to the Site" between June and December 2015, and that "[s]oil analytical results conducted within the subject fill area . . .

established the presence of . . . hazardous substances." (Compl. ¶¶ 95, 110.) Because ECI and Smith are alleged to have supervised the Site for the purpose of filling the Site, at least at the beginning of the relevant period, these allegations are sufficient to establish that Smith and ECI "manage[d], direct[ed], or conduct[ed] operations . . . having to do with the leakage or disposal of waste," namely, the alleged filling of the Site with hazardous materials. *New York v. P.A. Indus., Inc.*, No. 17-CV-1146, 2021 WL 9527480, at *13 (E.D.N.Y. July 14, 2021). Further, the Complaint adequately alleges that the Movants "operated the facility 'at the time of disposal of any hazardous substance'"—starting in June 2015—as required under § 9607(a)(2). *P.A. Indus., Inc.*, 2021 WL 9527480, at *13 (quoting 42 U.S.C. § 9607(a)(2); *see also Metro Container Grp. v. AC & T Co.*, 450 F. Supp. 3d 583, 601 (E.D. Pa. 2020), *order vacated on reconsiderations on other grounds sub nom. Metro Container Grp. v. AC&T Co.*, No. 18-CV-3623, 2020 WL 3060381 (E.D. Pa. June 8, 2020) (finding allegations that defendants were either "generator/transporters, or arrangers" sufficient to satisfy the first element of a CERCLA claim at the motion to dismiss stage).

The Court is not convinced by Movants' arguments that these allegations are insufficient to show that Movants "exercised operational control over pollution-related decisions." (Defs.' Reply 5.) Given that "[M]ovants are in exclusive possession of information and documentation relevant to their operations and waste streams" at the Site, "this is an instance where the facts are peculiarly within the possession and control of the defendant," thus rendering these allegations sufficient at the pleading stage. *Clarkstown*, 95 F. Supp. 3d at 681 (citation modified). To the extent that Movants argue they had no control over "disposal operations" despite supervising the site during part of the relevant period, such a "[d]efense[] of minimal involvement or limited proof of responsibility [should] . . . come into play during the damages phase when the court is

charged with equitable apportioning the costs of the cleanup," not on a motion to dismiss. *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 132 (2d Cir. 2010); *see also Clarkstown*, 95 F. Supp. 3d at 681 (declining to grant motion to dismiss based on movants' arguments that the "plaintiff d[id] not properly plead the category of PRP to which it belongs" or "fail[ed] to sufficiently alleged arranger liability."). For these reasons, the Court finds that Plaintiff has adequately alleged that Movants were operators of the facility and thus PRPs under CERCLA.[2]

d. National Contingency Plan

Movants also argue that Plaintiff's "bare allegation that the costs Plaintiff incurred are 'consistent with the National Contingency Plan,' without further explanation, is conclusory." (Defs.' Mem. 7 n.2 (citing Compl. ¶ 103).) Plaintiff contends that "to withstand a motion to dismiss, a plaintiff only 'has to allege it incurred necessary costs in a manner consistent with the NCP." (Pl.'s Opp'n 12 n.5 (quoting *Brooklyn Union Gas Co. v. Exxon Mobil Corp.*, 554 F. Supp. 3d 448, 467 (E.D.N.Y. 2021) (quotation marks omitted and alterations adopted).)

The Court agrees that Plaintiff's allegations that it has and will continue to incur "costs that are necessary costs consistent with the National Contingency Plan," (*see, e.g.*, Compl. ¶¶ 141–42), are sufficient at the motion to dismiss stage. *Brooklyn Union Gas Co.*, 554 F. Supp.

---

[2] Because the Court finds Plaintiff adequately alleged operator liability, it need not address whether Movants are arrangers or transporters under CERCLA. *See Cooper Crouse-Hinds, LLC v. City of Syracuse, New York*, 568 F. Supp. 3d 205, 236 n.5 (N.D.N.Y. 2021) (explaining that "[b]ecause the Court finds arranger liability, it need not address whether the County is an operator under CERCLA."); *Seggos v. Datre*, No. 17-CV-2684, 2024 WL 4120401, at *3 (E.D.N.Y. July 18, 2024), *supplemented*, 2024 WL 4120377 (E.D.N.Y. July 29, 2024), and *report and recommendation adopted*, 2024 WL 3823493 (E.D.N.Y. Aug. 14, 2024) (holding that "[t]he question of whether . . . defendants had sufficient management and control over [the facility] [to be liable as operators] need not be reached as plaintiffs have established that [defendants] are liable as transporters.").

3d at 468 (finding allegations that plaintiff "has incurred, and may in the future incur, substantial response costs" alleged to be "necessary and consistent with the NCP" was sufficient at the motion to dismiss stage. (citation modified)); *see also 101 Frost St. Assocs., L.P. v. United States Dep't of Energy*, No. 17-CV-3585, 2019 WL 4415387, at *11 (E.D.N.Y. Sep. 16, 2019) (finding substantially similar allegations to "plausibly allege[] recoverable response costs under CERCLA"); *Fitzgibbons*, 2011 WL 6218208, at *9 (explaining that "[w]hether [the p]laintiff's spending conforms to the NCP requires a more developed record; it is sufficient that [the p]laintiff has alleged in his proposed amended complaint that he 'has incurred response costs in connection with the [c]ontamination, all of which have been consistent with the [NCP], and are recoverable pursuant to CERCLA . . . ."). The Movants' Motion to Dismiss is thus denied with respect to the CERCLA claims against them.

2. Timeliness of State Law Claims

Next, Movants assert that Plaintiff's state law private nuisance and negligent and intentional trespass claims are "time-barred under New York's three-year limitations period for causes of action involving injury to property." (Defs.' Mem 7–8 (citing N.Y. C.P.L.R. § 214(4).) They argue that because the only conduct ascribed to Smith and ECI took place in 2015, and the alleged dumping of hazardous substances took place in 2015 and 2016, Plaintiff's filing of suit in March 2025 occurred "well beyond the three-year statutory period." (*Id.* 8.) Additionally, they assert that the alleged conduct was public, not latent or hidden, thus precluding Plaintiff from invoking the discovery rule under N.Y. C.P.L.R. § 214-c, which would toll the limitations period until the plaintiff knew or should have known of its injury. (*Id.* 8–9.) In response, Plaintiff claims that the statute of limitations for these claims should begin to run in April 2023, when the NYSDEC-approved subsurface investigation was conducted revealing hazardous substances in

the soil and groundwater at the Site. (Pl.'s Opp'n 16; Murphy Decl. ¶ 8.) On reply, Movants aver that the latest that Plaintiff discovered "the condition underlying its state-law claims" was November 30, 2020, when NYSDEC issued a notice of violation for the Site. (Defs.' Reply 9.)

Because it is an affirmative defense, a defendant arguing claims are barred by the statute of limitations "bears the burden of establishing by prima facie proof that the limitations period has expired since the plaintiff's claims accrued." *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995); *see also Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) (explaining that "generally, the lapse of a limitations period is an affirmative defense that a defendant must plead and prove" (citation modified)); *Gibson v. SCE Grp., Inc.*, 391 F. Supp. 3d 228, 252 (S.D.N.Y. 2019) (explaining that "[b]ecause the statute of limitations is an affirmative defense, the defendant bears the burden of establishing [it]" (citation omitted)), *aff'd*, No. 22-916, 2023 WL 4229913 (2d Cir. June 28, 2023); *Hicksville Water Dist. v. Philips Elecs. N. Am. Corp.*, No. 17-CV-4442, 2018 WL 1542670, at *5 (E.D.N.Y. Mar. 29, 2018) (describing the statute of limitations as an affirmative defense for which the defendant bears the burden). Accordingly, "[a] motion to dismiss is often not the appropriate stage to raise affirmative defenses like the statute of limitations." *Ortiz v. City of N.Y.*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010). "Nevertheless, "a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Whiteside*, 995 F.3d at 319 (citation modified). "A court accordingly may dismiss a claim on statute-of-limitations grounds at the pleadings stage if the complaint clearly shows the claim is out of time." *Id.* (citation modified); *see also Brown v. Kellogg Sales Co.*, No. 20-CV-7283, 2022 WL 992627, at *2 (S.D.N.Y. Mar. 31, 2022) (explaining that a claim may be dismissed at the pleadings stage if the complaint clearly shows it is out of time); *Malcolm v. City of N.Y.*, No. 20-CV-9641, 2022 WL 684408, at

*2 (S.D.N.Y. Mar. 8, 2022) (describing circumstances when court may dismiss claim for falling outside the statute of limitations at the pleading stage).

N.Y. C.P.L.R. § 214-c provides that "the three year period within which an action to recover damages for personal injury or injury to property caused by the latent effects of exposure to any substance or combination of substances . . . shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier." *See Hicksville Water Dist.*, 2018 WL 1542670, at *4 (holding that statute of limitations began to run when plaintiff "knew or should have known of the contamination of its groundwell").

It is not clear, from the face of the Complaint, when Plaintiff knew or reasonably should have known of the contamination of the Site's soil and groundwater. In this context, "[i]t is not enough to merely detect contamination," rather, "knowledge of both the dangers of contamination as well as the harmful impact are required." *See id.* at *5. While Movants are correct that some of the alleged dumping causing contamination occurred in 2015 and 2016, (Compl. ¶¶ 110, 114), and that NYSDEC issued a Notice of Violation for the Site in November 2020, (*id.* ¶ 132), the Complaint does not indicate when Plaintiff became aware of the presence of hazardous substances in the Site's soil and groundwater, (*id.* ¶ 95). In its briefing, Plaintiff avers that this occurred in April 2023. (Pl.'s Opp'n 18.)

The Second Circuit has held that merely detecting contamination is not enough to start the statute of limitations, but rather that the statute begins to run upon knowledge that "the contamination [i]s significant enough to justify an immediate or specific remediation effort." *Bethpage Water Dist. v. Northrop Grumman Corp.*, 884 F.3d 118, 128 (2d Cir. 2018) (quoting *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 112 (2d Cir. 2013)).

The Parties appear to dispute whether the Notice of Violation issued in November 2020 was sufficient to put Plaintiff on notice that the contamination required an immediate or specific remediation effort. (*Contrast* Defs.' Reply 9 (asserting that NYSDEC "put Plaintiff on notice that regulators had identified unlawful disposal activity and required its investigation, providing objective awareness of a condition 'significant enough to justify an immediate or specific remediation effort'"), *with* Pl.'s Opp'n 17–18 (asserting that Plaintiff "had no way to know that the fill material dumped on the Site contained hazardous substances at levels requiring remediation until the testing was completed [in April 2023]").) In other words, there is a dispute of fact regarding whether Plaintiff should have reasonably known that the Site required remediation in November 2020, when it knew an investigation was required by the state, or in April 2023, when it understood the extent of the hazardous substances at the Site. Accordingly, "resolving the Defendants' statute of limitations argument is inappropriate, given the fact-specific evaluation that is required." *Hicksville Water Dist.*, 2018 WL 1542670, at *5; *see also Bano v. Union Carbide Corp.*, 361 F.3d 696, 710 (2d Cir. 2004) ("'Where it does not conclusively appear that a plaintiff had knowledge of facts from which the injury could reasonably be inferred, the complaint should not be dismissed on motion and the question should be left to the trier of fact.'" (quoting *Glod v. Morrill Press Div. of Engraph, Inc.*, 564 N.Y.S.2d 905, 908 (N.Y. App. Div. 1990))); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 268 F.R.D. 160, 166 (E.D.N.Y. 2010) ("[T]he determination of [a statute of limitations defense] requires a consideration of the merit of both parties' claims and defenses.").

Given the procedural posture of this case, it would be premature to find that the statute of limitations bars Plaintiff's state law claims at this time. *See Seggos v. Datre*, No. 17-CV-2684, 2022 WL 219960, at *15 (E.D.N.Y. Jan. 25, 2022) (finding a genuine dispute of material fact

existed as to when statute of limitations began to run even when the state government began an investigation of the site); *Hicksville Water Dist.*, 2018 WL 1542670, at *5 (finding that the plaintiff did not necessarily have notice, for statute of limitations purposes, despite receiving EPA data demonstrating contamination in the water because there was a question of fact as to whether a reasonable water provider would take action at that time). Accordingly, Movants' Motion to Dismiss these claims on the basis that they are time-barred is denied.

<u>3. Duplicative Unjust Enrichment and Restitution Claims</u>

Movants next contend that Plaintiff's unjust enrichment and restitution claims should be dismissed because they are duplicative of Plaintiff's CERCLA claims. (Defs.' Mem. 9–11.) Plaintiff responds that it is premature to dismiss its claims on this basis at the pleading stage, particularly given that Plaintiff seeks restitution "for all damages, costs and expenses that Plaintiff has incurred and may incur in the future, which are not recoverable under Plaintiff's statutory CERCLA claims for relief herein." (Pl.'s Opp'n 20; Compl. ¶¶ 160, 167.) Movants argue that these allegations are not specific enough to be distinct from the CERCLA expenditures, particularly because Plaintiff elsewhere defines those costs as "response costs to perform [Defendants'] duty," which is what CERCLA governs. (Defs.' Reply 11 (citing Compl. ¶ 156).)

While it is true that Plaintiff could not bring "supplemental claims along with [its] CERCLA claim if doing so would permit [it] to recover the same removal costs under both CERCLA and other state or federal laws," at this early stage in the litigation, it "would seem imprudent to dismiss state law claims outright on Rule 12 because of a mere *potential* for double recovery." *New York v. W. Side Corp.*, 790 F. Supp. 2d 13, 25–26 (E.D.N.Y. 2011) (emphasis in original); *Town of Hempstead v. United States*, No. 16-CV-3652, 2017 WL 11699273, at *18

(E.D.N.Y. Sep. 18, 2017) (rejecting "concern that, as the complaint is written, the [plaintiff] could recover the same costs twice under different legal theories," because "the [c]ourt should not dismiss one set of the claims at this procedural posture because of a mere *potential* for double recovery" (citation modified)).

Further, Movants have raised a number of issues that, while not dispositive at this stage in the litigation, could lead to dismissal of either Plaintiff's CERCLA or state law claims following discovery, including, inter alia, Plaintiff's failure to comply with the NCP or establish that Movants are responsible parties under CERCLA. Because "[i]t is conceivable that discovery will reveal that Plaintiff's potential for recovery under CERCLA is unavailable," the Court declines to dismiss Plaintiff's state-law claims as duplicative at this stage. *Fitzgibbons*, 2011 WL 6218208, at *14; *see also New York v. Hickey's Carting, Inc.*, 380 F. Supp. 2d 108, 115 (E.D.N.Y. 2005) (declining to find double recovery barred state law claims because "it would be premature to say at this juncture that the state law claims conflict with [CERCLA] when there has been, as of yet, no recovery to be duplicated and there remains the potential that [the p]laintiff may not be able to recover all of its costs from each cause of action"). The Court therefore declines to find, at this juncture, that Plaintiff's state law claims for unjust enrichment and restitution are duplicative of its CERCLA claims.[3]

---

[3] Movants rely on a line of cases which dismissed unjust enrichment and restitution claims not because they were *duplicative* of CERCLA claims—which Movants assert is the issues with Plaintiff's state law claims— but because these claims were *preempted* by CERCLA, specifically the "statutory settlement scheme" created by Congress in enacting § 113(f) of CERCLA. *See, e.g., Niagara Mohawk Power Corp.*, 596 F.3d at 139 (finding state law claims seeking contribution following a settlement were preempted because they would "circumvent the settlement scheme."); *Bedford Affiliates v. Sills*, 156 F.3d 416, 427 (2d Cir. 1998), *overruled on other grounds by W.R. Grace & Co.–Conn. v. Zotos Int'l, Inc.*, 559 F.3d 85, 89–90 (2d Cir. 2009) (finding CERCLA preempted state law remedies of restitution and indemnification seeking contribution to the settlement amount from non-settling parties); *Volunteers of Am. of W. N.Y. v. Heinrich*, 90 F. Supp. 2d 252, 257–58 (W.D.N.Y. 2000) (noting that state law claims seeking

4. Cross-Claims

Because the Court finds that Plaintiff states a plausible claim under CERCLA and the state law claims challenged by Movants, it declines to dismiss the cross-claims against Movants.

## III. Conclusion

For the reasons set forth above, Movants' Motion is denied. The Clerk of Court is respectfully directed to terminate the pending Motion at Dkt. No. 75.

SO ORDERED.

Dated: November 23, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge

---

damages available under the CERCLA settlement scheme would be available but declining to dismiss state law claims because plaintiff alleged certain damages that would not be available under CERCLA). Here, Plaintiff is not seeking recovery pursuant to a settlement under § 113 of CERCLA, but rather cost recovery under § 107. As noted in *New York v. West Side Corp.*, "[s]ince [P]laintiff [is] seeking recovery under CERCLA § 107 as opposed to § 113, the *Bedford* concerns about inconsistencies between the CERCLA settlement framework and the state common law remedies are not relevant." 790 F. Supp. 2d at 28. *See also Town of Hempstead*, 2017 WL 11699273, at *18 (finding that "[the plaintiff's] state law claims do not threaten to bypass the systems set forth by CERCLA Section 107, and the two are therefore not in conflict such that preemption is warranted under the *Bedford* rationale.").